UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
CHRISTOPHER JOSEPH,

      Plaintiff,

    - against -

ANDREW CUOMO, Governor of New York;
BEVERLY LOCHWOOD (ORC); LETITIA
JAMES; SUPT. E. WILLIAMS; NYS BOARD
OF PAROLE; OFFICER CASTILLO;
ANTHONY J. ANNUCCI; S.P.O. KENNEDY;
BILL DE BLASIO; YVONNE TINSLEY-
BALLARD; and STACEY DORSEY,

      Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-3957 (PKC) (LB)

PAMELA K. CHEN, United States District Judge:

   Plaintiff Christopher Joseph, confined at the Fishkill Correctional Facility ("Fishkill"),

filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983").  Plaintiff's request to

proceed *in forma pauperis* ("IFP") is granted pursuant to 28 U.S.C. § 1915.  For the reasons

contained herein, the Court finds that the action as currently pleaded may proceed only as to

Plaintiff's due process claim against Parole Officer Castillo, but grants Plaintiff leave to submit an

amended complaint alleging, if applicable, additional facts in support of his claims.

## BACKGROUND

   Plaintiff alleges that the eleven named Defendants enacted and implemented a housing

placement regime for convicted sex offenders that caused Plaintiff to be "illegally detain[ed]" for

an indefinite period within a residential treatment facility ("RTF") at Fishkill.  (*See generally*

Complaint ("Compl."), Dkt. 1.)[1]  In particular, Plaintiff alleges that the New York State Board of

---

[1] At the time the complaint was filed, Plaintiff was being detained at the Fishkill RTF. (Complaint, Dkt. 1 at ECF 1 (Page citations refer to the pagination generated by the Court's

Parole and several state and city employees—including Parole Officer ("P.O.") Castillo (*see id.* at ECF 6–7), Senior Parole Officer ("S.P.O.") Kennedy (*id.* at ECF 8), Department of Corrections and Community Supervision ("DOCCS") Reentry Specialist Stacey Dorsey (*id.*), Inmate Counselor Beverly Lockwood (*id.* at ECF 8–9), Acting Commissioner of DOCCS Anthony J. Annucci (*id.* at ECF 8), Fishkill Supt. E. Williams (*id.* at ECF 9), and Department of Homeless Services ("DHS") Assistant Commissioner Yvonne Tinsley-Ballard (*id.*)—contributed to his prolonged confinement.

Plaintiff claims that after completing his period of incarceration, a drug treatment program, and his parole time assessment for an unspecified crime, he was wrongfully transferred to the Fishkill RTF rather than being restored to community supervision and released.  As a result, Plaintiff alleges that he suffered harms arising from his continued confinement and the deficient housing placement process.  (*Id.* at ECF 3, 5, 7–8.)  Plaintiff further alleges that the housing restrictions imposed upon him through the New York State Sexual Assault Reform Act ("SARA"), which prohibit Plaintiff from living within 1,000 feet of a school, *see* N.Y. Exec. Law § 259–c(14); N.Y. Penal Law § 65.10(4–a), effectively allowed DOCCS and its employees to "illegally detain [him] after [his] sentence [] expired" (Compl., Dkt. 1, at ECF 10).  Finally, Plaintiff claims that the New York State Board of Parole's imposition of "a special housing condition . . . has indefinitely subjected [him] to cruel and unusual punishment."  (*Id.* at ECF 10 (cleaned up).)

---

CM/ECF docketing system and not the document's internal pagination.).)  On October 1, 2020, the Court received a letter from Plaintiff dated September 21, 2020, indicating that he had been granted permission to move to approved housing in Manhattan starting on October 7, 2020.  (Oct. 1, 2020 Letter, Dkt. 5.)  However, because the Court has not received confirmation that Plaintiff has in fact moved into the community, the Court proceeds based on the allegations and claims contained in the Complaint.

These claims are based on the following allegations in the Complaint.[2]  Although Plaintiff is "a level one sex offender," "[t]he board of Parole has presumed [him to be] a level 3 sex offender and has . . . illegally detained, . . . strip[-]searched and handcuffed [him]."  (*Id.*)  P.O. Castillo, his "assigned [parole] officer from Manhattan Division 6 . . . [s]ince 09/10/2019," has never met with Plaintiff, reached out to him personally, conducted a home visit, or called to see if he was abiding by his curfew or stipulations.  (*Id.* at ECF 6.)  P.O. Castillo has told the Offender Rehabilitation Coordinator that if Plaintiff calls her he will be violating his parole.  (*Id.*)  P.O. Castillo has repeatedly delayed and obstructed Plaintiff's and his family's efforts to find him SARA-compliant housing.  (*See id.* at ECF 7 ("She has rejected every address I[']ve proposed.  I have tried th[rough] my family to find more addresses but Castillio [sic] just keeps rejecting them.").)  Additionally, P.O. Castillo's supervisor, S.P.O. Kennedy, "has not yet once reprimanded Castillo about not checking on [Plaintiff]," and "even went as far as to tell [Plaintiff's] family to leave her alone." (*Id.* at ECF 8.)

Plaintiff's release from the Fishkill RTF has been obstructed by DOCCS Reentry Specialist Stacey Dorsey, who is "the only person [responsible] for who gets out," and who "picks [for release] once a month a total of 10 people from some kind of list that she has generated."  (*Id.*) This is a "made up policy between Mrs[.] Dorsey an[d] someone from DHS . . . solely for administrative ease."  (*Id.*)  Beverly Lockwood, an inmate counselor whom Plaintiff sees every two weeks, told Plaintiff that he should "look to get out around 11 or 12 months," that "Bellvue [sic] doesn't [accept] sex offenders," that "she can't call anyone for [Plaintiff]" because she "isn't allowed," and that Plaintiff just has to "wait it out."  (*Id.* at ECF 9.)  The housing addresses that

---

[2] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiff's non-conclusory, factual allegations.  *See Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Defendant Lockwood reads to him, which are provided to the Parole Department by reentry staff, "are always not [SARA] Compliant." (*Id.*)  Additionally, according to Defendant Yvonne Tinsley-Ballard, a "commissioner for DHS Men['] s Adult Shelters in NYC," "DHS cannot house [Plaintiff] if [he is] not present at an intake shelter in person," which has contributed to Plaintiff's prolonged wait for placement in a SARA-compliant shelter.  (*Id.*)

Defendant Anthony J. Annucci, Acting Commissioner of DOCCS, "design[a]ted Fishkill an RTF" even though it "has yet to meet the requir[e]ments of an actual RTF," and Defendant Annucci "extended [Plaintiff's] stay in [the] RTF past the maximum of 6 months that [the] law requires." (*Id.* at ECF 8.)  Fishkill Superintendent E. Williams, who runs Fishkill's RTF program, "knows [Fishkill is] not an RTF." (*Id.* at ECF 9.)  Plaintiff is "never allowed outside the facility," and is subject to the rules applicable to the facility's "general population." (*Id.*  ("I eat in the mess-hall, recreation is [in] the facility yard.").)

Plaintiff also names three elected officials he claims are generally responsible for his continued incarceration.  First, Plaintiff alleges that Governor Andrew Cuomo "is aware that [Plaintiff has] maxed out on [his] jail time and [is] continuously being held in prison," and that he left Plaintiff "in prison to deal with Covid19 with no medical intervention" following Plaintiff's request to the Governor to be released. (*Id.* at ECF 5.)  Plaintiff also claims that by signing SARA into law, Governor Cuomo "has basically kicked [Plaintiff] out of New York City." (*Id.*)  Second, Plaintiff alleges that Mayor Bill de Blasio "has let the state illegally detain [] NYC residen[ts] indefinit[e]ly stating there's no room in the shelters" for individuals in need of SARA-compliant housing. (*Id.* at ECF 6.)  Consequently, Plaintiff alleges that Mayor de Blasio "has also pretty much kicked [him] out [of] the City," in violation of Plaintiff's "right to shelter because of a Callahan Decree from 1981." (*Id.*)  And third, Plaintiff alleges that New York Attorney General

Letitia James "allow[ed] DOCCS to illegally detain [Plaintiff] after [his] sentence has expired" and that she "[knew] that everything going on is wrong an[d] illegal," as he has "written to her about 10 times" but never gotten a response.  (*Id.* at ECF 10.)  Plaintiff alleges that Attorney General James has said that he "can spend [his] entire post-Release in jail" and has "breached the State Court Conviction Contract where [Plaintiff] was to do no more than 3 [years] in prison." (*Id.*)

As a result of not receiving a fair process or being timely released to SARA-compliant housing, Plaintiff claims that he missed his son's birth (*id.* at ECF 5), was subjected to harmful handcuffing and strip searches (*id.* at ECF 5, 7, 10), was refused his "right to shelter as a homeless NYC resident" (*id.* at ECF 11), and has been exposed to COVID-19 (*id.* at ECF 5, 9).  He seeks his immediate release from the Fishkill RTF and a total of $1,050,000 in damages from Defendants in varying amounts.  (*Id.* at ECF 11.)

## LEGAL STANDARD

A complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.  A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2

(E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Title 28 of the United States Code, § 1915A, requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint is (1) frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Similarly, pursuant to the IFP statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

## DISCUSSION

Liberally construing the allegations in the Complaint, the Court finds that Plaintiff purports to raise both a habeas claim as well as § 1983 claims for violations of his Fourteenth Amendment due process rights and Eighth Amendment right to be free from cruel and unusual punishment.  As explained below, Plaintiff's habeas claim is dismissed without prejudice for failure to show exhaustion.  While many of the named Defendants are immune from liability in some capacity, the Court finds that Plaintiff may proceed with his § 1983 Fourteenth Amendment due process claim against P.O. Castillo.  The Court also grants Plaintiff leave to submit an Amended Complaint alleging additional facts in support of his other claims against additional Defendants.

## I.    Habeas v. Section 1983

The Second Circuit has found that in situations which fall into the gray area between habeas and § 1983, "some federal remedy—either habeas corpus or § 1983—must be available." *Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999).  Traditionally, challenges by state prisoners to the "fact

or duration" of their confinement fall under the umbrella of habeas.  *See id.* at 23. ("[W]here the fact or duration of a [state] prisoner's confinement is at issue, § 1983 is unavailable, and only § 2254(b) with its exhaustion requirement may be employed."); *see also Ruffins v. Dep't of Corr. Servs.*, 701 F. Supp. 2d 385, 395 (E.D.N.Y. 2010) ("[Post-release supervision] terms, like good-time credits or parole terms, are considered by courts to be part of a prisoner's sentence, since they relate to the fact or duration of a prisoner's confinement." (internal citations omitted)).  On the other hand, challenges to *conditions* of confinement generally fall under § 1983.  As the Second Circuit has explained, "any deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement."  *Jenkins*, 179 F.3d at 28.

Here, Plaintiff appears to challenge both the fact and duration of his confinement at Fishkill's RTF (*see, e.g.*, Compl., Dkt. 1, at ECF 8 (alleging that Defendant Annucci "extended [Plaintiff's] stay in [the] RTF past the maximum of 6 months that law requires"); *id.* at ECF 10 (claiming that the Board of Parole "illegally detained" Plaintiff)), and what could be viewed as conditions of his confinement, including the process he was afforded with respect to his release to community-supervised housing (*see, e.g.*, *id.* at ECF 7 (alleging that P.O. Castillo refused to measure the "actual distance" between his grandmother's house and a nearby school); *id.* at ECF 9 (challenging the prison-like conditions of Fishkill's RTF)).  The Court thus analyzes his claims under both the habeas and Section 1983 frameworks.

## II.    Habeas

To the extent Plaintiff alleges that he is being held in custody beyond the length of his sentence, the Court construes Plaintiff's claims for release as claims for habeas corpus relief brought under 28 U.S.C. § 2254.  Section 2254 allows a federal court to entertain a habeas corpus petition for relief from a state-court judgment only on the ground that the Petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  *See* 28 U.S.C. § 2254(a).

However, "as a prerequisite to *habeas* relief, § 2254 requires exhaustion of all available state remedies." *Teichmann v. People of the State of New York*, No. 11-CV-3653 (LAP), 2011 WL 13110317, at *1 (S.D.N.Y. Sept. 27, 2011) (citing 28 U.S.C. § 2254(b); *Rose v. Lundy*, 455 U.S. 509, 510 (1982)), *aff'd sub nom. Teichmann v. New York*, 769 F.3d 821 (2d Cir. 2014). Plaintiff's habeas "petition must be dismissed because it does not demonstrate that Plaintiff has exhausted his available state remedies in accordance with 28 U.S.C. § 2254(b) and (c)." *Brickhouse v. DuBois*, No. 20-CV-4759 (LLS), 2020 WL 4676476, at *3 (S.D.N.Y. Aug. 11, 2020) (citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991)). Thus, to the extent Plaintiff alleges claims under 28 U.S.C. § 2254, they are dismissed without prejudice for failure to show exhaustion.

Additionally, "[a] person seeking to challenge his state conviction or sentence under § 2254 cannot do so if 'the sentence imposed for that conviction has *fully expired* at the time his petition is filed' because the person is no longer in custody pursuant to the relevant state-court judgment." *Washington v. Schneiderman*, No. 20-CV-1550 (LLS), 2020 WL 1674106, at *3 (S.D.N.Y. Apr. 3, 2020) (quoting *Maleng v. Cook*, 490 U.S. 488, 491 (1989)). However, courts "have construed the term 'in custody' to extend beyond physical incarceration; it has been interpreted to include individuals who, at the time of the filing of the petition, were on parole or supervised release." *Thompson v. Besio*, No. 11-CV-2752 (ENV), 2014 WL 1478851, at *2 n.6 (E.D.N.Y. Apr. 15, 2014) (citing *Jones v. Cunningham*, 371 U.S. 236, 243 (1963); *Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994)). It is not clear to the Court whether Plaintiff remains in custody or on supervised release. While Plaintiff may refile his petition if he is able to allege that he has

exhausted all his state remedies, he can do so only if he remains "in custody," either because he remains incarcerated or because he is still subject to parole or supervised release.[3]

## III.    Section 1983

Section 1983 imposes liability on a "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights," and instead "merely provides a method for vindicating federal rights elsewhere conferred," *e.g.*, in the Constitution.  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (internal quotation marks and citations omitted).  To state a claim under § 1983, a plaintiff must plausibly allege "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'"  *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs.*

---

[3] Under the gatekeeping provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a habeas petitioner must obtain authorization from the appropriate Court of Appeals before filing a second or successive habeas corpus petition.  *See* 28 U.S.C. § 2244(b)(3)(A).  A petition is "second or successive" if a previous habeas corpus petition was decided on the merits.  *See Graham v. Costello*, 299 F.3d 129, 132 (2d Cir. 2002).  Because conversion of a submission into a habeas corpus petition may restrict a petitioner's future attempts to seek habeas corpus relief, a district court must normally give a *pro se* petitioner notice and an opportunity to withdraw his submission before the court recharacterizes it as a § 2254 petition. *See Cook v. N.Y. State Div. of Parole*, 321 F.3d 274, 282 (2d Cir. 2003).  Here, however, giving Plaintiff notice and granting him an opportunity to withdraw is unnecessary, as dismissal for failure to exhaust state remedies does not trigger the AEDPA's restrictions on second or successive petitions because such a dismissal is not an adjudication on the merits.  *See Stewart v. Martinez-Villareal*, 523 U.S. 637, 643–44 (1998); *see also Whitley v. United States*, No. 04-CR-1381 (NRB), 2020 WL 1940897, at *5 (S.D.N.Y. Apr. 22, 2020) ("[C]ase law in this Circuit instructs 'that before a motion or petition can be regarded as successive, there must be some prior adjudication on the merits or a dismissal with prejudice.'" (quoting *Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001)).

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)); *see also Flynn v. James*, 513 F. App'x. 37, 39 (2d Cir. 2013) (summary order).

In addition, "[i]t is well settled in th[e] [Second] Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *D'Angelo v. Annucci*, No. 16-CV-6459 (KMK), 2017 WL 6514692, at *4 (S.D.N.Y. Dec. 19, 2017) (second and third alterations in original) (quoting *Brown v. City of New York*, No. 13-CV-6912 (TPG), 2017 WL 1390678, at *6 (S.D.N.Y. Apr. 17, 2017)); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994).

As discussed below, the Court construes Plaintiff's § 1983 claims as arising primarily under the Fourteenth and Eighth Amendments.

### A.      Sovereign Immunity

"[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (second alteration in original) (internal quotation marks and citation omitted); *see also McCluskey v. N.Y. State Unified Court Sys.*, 442 F. App'x 586, 588 (2d Cir. 2011) (summary order). "It is well settled that § 1983 does not override Eleventh Amendment immunity." *Morabito v. New York*, 803 F. App'x 463, 465 (2d Cir. 2020) (summary order), *as amended* (Feb. 27, 2020), *cert. denied*, 141 S. Ct. 244 (2020). Indeed, the Eleventh Amendment "immunizes a state entity that is an arm of the State, including, in appropriate circumstances, a state official acting in his or her official capacity." *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (internal quotation marks and citations omitted). "[T]he applicability of the Eleventh Amendment bar [to suits against individuals in their official capacities] depends on the form of relief sought. . . . Money damages cannot be recovered

from state officers sued in their official capacities." *Riley v. Cuomo*, No. 17-CV-1631 (ADS) (AYS), 2018 WL 1832929, at \*4 (E.D.N.Y. Apr. 16, 2018) (internal quotation marks and citation omitted).

As a state agency, the New York State Board of Parole is immune from suit. *See In re Deposit Ins. Agency*, 482 F.3d at 617; *see also Washington*, 2020 WL 1674106, at \*2 ("Plaintiff's claims under 42 U.S.C. § 1983 against . . . the Board of Parole are barred by the doctrine of Eleventh Amendment immunity." (citing *Gollomp*, 568 F.3d at 366)). Accordingly, Plaintiff's claims against Defendant New York State Board of Parole are dismissed.

Plaintiff also brings claims against numerous state officials, namely Governor Cuomo, State Attorney General Letitia James, Acting Commissioner of DOCCS Anthony J. Annucci, Fishkill Superintendent E. Williams, S.P.O. Kennedy, P.O. Castillo, DOCCS Reentry Specialist Stacey Dorsey, and DOCCS Inmate Counselor Beverly Lockwood. Plaintiff purports to sue "all Defendants in their individual and complete capacity." (Compl., Dkt. 1, at 1, 3.) Insofar as Plaintiff sues these defendants for damages[4] in their official capacities, those claims are barred by sovereign immunity. *See Riley*, 2018 WL 1832929, at \*4; *Scott v. Rosenberger*, No. 19-CV-1769

---

[4] While under *Ex parte Young*, "a plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for prospective injunctive relief from violations of federal law," *In re Deposit Ins. Agency*, 482 F.3d at 617 (internal quotation marks and citations omitted), Plaintiff's Complaint does not, in its current form, seek such relief. Plaintiff's request to be released from the Fishkill RTF does not constitute prospective injunctive relief because it is based on these Defendants' alleged past misconduct. *See Pungitore v. Barbera,* 506 F. App'x. 40, 41 (2d Cir. 2012) (summary order) ("[W]hen seeking prospective injunctive relief, the plaintiff must prove the likelihood of *future* or *continuing* harm." (emphasis in original) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 111 (1983))); *Robidoux v. Celani,* 987 F.2d 931, 938 (2d Cir. 1993) ("For a plaintiff to have standing to request injunctive or declaratory relief, the injury alleged must be capable of being redressed through injunctive relief 'at that moment[,' either because] the defendant was engaging in the unlawful practice against the plaintiff at the time of the complaint . . . [or] there is a substantial likelihood that [plaintiff] will again be subjected to the allegedly unlawful policy in the future[.]" (internal citations and quotation marks omitted)).

11

(CS), 2020 WL 4274226, at *4 (S.D.N.Y. July 24, 2020) ("DOCCS officials enjoy Eleventh Amendment immunity from suit under § 1983 for damages in their official capacities." (internal quotation marks and citation omitted)). However, his damages claims against these Defendants in their individual capacities are not barred by sovereign immunity and may proceed to the extent they are sufficiently pled, which, with one exception, as discussed below, they are not.

**B.      Fourteenth Amendment Procedural Due Process**

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Adams v. Annucci*, No. 17-CV-3794 (KMK), 2018 WL 4608216, at *6 (S.D.N.Y. Sept. 25, 2018) (quoting *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory scheme." *Kindler v. City of New York*, No. 17-CV-9896 (LTS) (RWL), 2019 WL 4511717, at *4 (S.D.N.Y. Sept. 19, 2019) (quoting *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001)); *see also Velazquez v. Gerbing*, No. 18-CV-8800 (KMK), 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020) ("The Second Circuit has established that a New York parole grantee has a liberty interest in his open release date of which he may not be deprived without due process." (internal quotation marks and citation omitted)). The Second Circuit "has recognized that inmates may fall along a 'continuum' of liberty interests ranging from inmates who may only have a 'unilateral hope' of early release to those who have already been released on parole." *Kindler*, 2019 WL 4511717, at *4 (citing *Victory v. Pataki*, 814 F.3d 47, 59–60 (2d Cir. 2016)).

However, even where parolee plaintiffs possess liberty interests, district courts have held that plaintiffs must allege "specific deficiencies in the process" they were afforded beyond "the mere fact of [their] confinement beyond [their] conditional release date." *D'Angelo*, 2017 WL

6514692, at *9; *see also Doe v. Simon*, 221 F.3d 137, 140 (2d Cir. 2000) (holding that the minimum process due to plaintiff was "notice that he would not be released without an approved residence, an explanation of why this special condition was being imposed, and an opportunity to dispute the grounds for application of the special condition"); *Velazquez*, 2020 WL 777907, at *9–10 (finding that plaintiff being on notice of the requirement of compliant housing, having a "meaningful opportunity to advocate for his proposed residence," and receiving reasoned denials was "constitutionally sufficient procedural due process").

Here, Plaintiff alleges that he was held at the RTF beyond the six-month limit under New York law following the completion of his parole time assessment on September 10, 2019. (*See* Compl., Dkt. 1, at ECF 3, 5.) While Plaintiff acknowledges that "SARA [] prohibits [him] from being released until compliant housing is established" (*id.* at ECF 10), he also alleges specific deficiencies in the process by which that housing is determined (*see, e.g.*, *id.* at ECF 7 ("When I propose an address it takes the P.O. 2 months to even address what I put in."); *id.* ("When I did get a room to rent that was $600.00 a month[,] [the P.O.] waited 3 months and by then the room was rented to someone else."); *id.* (alleging that P.O. Castillo would not have the distance measured between Plaintiff's grandmother's house and a nearby school but instead said she "can see the school an[d] that means it[']s to[o] close")). Plaintiff thus appears to allege procedural due process claims against several of the defendants as outlined below.

### a.  P.O. Castillo

Plaintiff alleges that P.O. Castillo was personally involved in depriving Plaintiff of the opportunity to meaningfully advocate for SARA-compliant housing. (*See generally* Compl., Dkt. 1, at ECF 6–7.) Further, Plaintiff alleges that P.O. Castillo provided misleading information, did not attempt to verify Plaintiff's proposals for compliant residences, and summarily denied each

address Plaintiff submitted.  (*Id.* at ECF 7 ("She has told my family [through] text messages that [B]ell[e]vue Men[']s Shelter do[e]sn't [accept] sex offender[s].  I have since found out that's a lie. . . . I have asked that they send a[n] officer out to measure the actual distance.  She said no. . . . She waited 3 months and by then the room was rented to someone else. . . . I have tried [through] my family to find more addresses but [Castillo] just keeps rejecting them.").)  Accordingly, Plaintiff has sufficiently alleged that P.O. Castillo satisfies the personal involvement requirement for § 1983 actions.  *See, e.g.*, *Trisvan v. Annucci*, No. 14-CV-6016 (MKB), 2019 WL 2304647, at *7–8 (E.D.N.Y. May 30, 2019).  Plaintiff's due process claim against her in her personal capacity may thus proceed.  *Cf. Yunus v. Robinson*, No. 17-CV-5839 (AJN) (BCM), 2018 WL 3455408, at *36 (S.D.N.Y. June 29, 2018) (recommending the denial of motion to dismiss claim that parole officer defendant "acted so arbitrarily as to violate plaintiff's rights under the Due Process Clause" where the officer was "personally involved in the discretionary denial of plaintiff's third request to move out of a homeless shelter[]"), *report and recommendation adopted*, 2019 WL 168544 (S.D.N.Y. Jan. 11, 2019), *appeal withdrawn sub nom. Yunus v. Lewis-Robinson*, No. 19-382, 2019 WL 3814554 (2d Cir. May 15, 2019).

### b.  S.P.O. Kennedy

Plaintiff's sole allegations against S.P.O. Kennedy are that "she has not yet once reprimanded Castillo about not checking on [Plaintiff]" and that she told Plaintiff's family to "leave her alone."  (Compl., Dkt. 1, at ECF 8.)  Without more, such allegations fail to plausibly allege S.P.O. Kennedy's personal involvement in the aforementioned procedural due process violation.  Because vicarious liability is inapplicable under § 1983, a supervisor may only be liable if the plaintiff shows:

> (1) actual direct participation in the constitutional violation[;] (2) failure to remedy
> a wrong after being informed through a report or appeal[;] (3) creation of a policy

> or custom that sanctioned conduct amounting to a constitutional violation, or
> allowing such a policy or custom to continue[;] (4) grossly negligent supervision
> of subordinates who committed a violation[;] or (5) failure to act on information
> indicating that unconstitutional acts were occurring.

*D'Angelo*, 2017 WL 6514692, at \*4 (quoting *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir.

2003)); *see also Brandon v. Kinter*, 938 F.3d 21, 36–37 (2d Cir. 2019).  In order for Plaintiff to

prevail against S.P.O. Kennedy, he would need to include additional allegations showing a more

"tangible connection between the acts of [S.P.O. Kennedy] and the injuries suffered."  *Johnson v.*

*City of New York*, No. 18-CV-4030 (MKB), 2020 WL 249100, at \*3 (E.D.N.Y. Jan. 16, 2020)

(quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)).  Accordingly, Plaintiff's claims as to

Defendant S.P.O. Kennedy are dismissed, although Plaintiff may renew this claim if he is able to

allege facts showing that S.P.O. Kennedy was aware of and deliberately indifferent to

constitutional mistreatment of Plaintiff by her subordinates.

### c.  DOCCS Reentry Specialist Stacey Dorsey

Plaintiff claims that Stacey Dorsey and "someone from DHS" maintain a "made up policy"

for placing convicted sex offenders in New York City shelter housing that is designed "solely for

administrative ease."  (Compl., Dkt. 1, at ECF 8.)  Even liberally construed, such allegations do

not state a claim upon which relief may be granted, as they do not demonstrate how Defendant

Dorsey "creat[ed] a policy or custom that sanctioned conduct amounting to a constitutional

violation, or allow[ed] such a policy or custom to continue," *D'Angelo*, 2017 WL 6514692, at \*4,

nor do they allow the Court to infer that Defendant Dorsey was personally involved in any

violations of procedural due process.  Accordingly, Plaintiff's due process claims as to Defendant

Stacey Dorsey are dismissed, although Plaintiff may renew this claim if he is able to allege facts

showing that Stacey Dorsey was personally involved in or created a policy or custom that

sanctioned specific constitutional violations to which Plaintiff was subject.

d.  <u>DOCCS Inmate Counselor Beverly Lockwood</u>

Plaintiff alleges that DOCCS Inmate Counselor Beverly Lockwood, with whom Plaintiff meets every two weeks at the Fishkill RTF, told Plaintiff that "Bell[e]vue doesn't [accept] sex offenders," that "she can't call anyone for [Plaintiff]," and that he just has to "wait it out." (Compl., Dkt. 1, at ECF 8–9.)  Additionally, Plaintiff alleges that when he would meet with Lockwood, she would "read off a couple of addresses re-entry put in to parole," but the addresses were "always not compliant." (*Id.* at ECF 9.)  Without more detail as to how Lockwood's conduct contributed to Plaintiff's constitutional deprivation, such allegations do not sufficiently allege a procedural due process claim. *See Warren v. Pataki*, 823 F.3d 125, 139 (2d Cir. 2016) (affirming district court's dismissal of plaintiff's procedural due process claims against former chairman of NYS Board of Parole and former prison superintendent where "[t]here was no evidence that either defendant was responsible—either directly or indirectly—for [plaintiff]'s continued imprisonment").  Thus, Plaintiff's due process claims as to Defendant Beverly Lockwood are dismissed, although with leave to re-plead if Plaintiff can show that Defendant Lockwood lied or was deliberately indifferent in providing information about Bellevue's restrictions, or that she was otherwise deliberately indifferent with respect to Plaintiff's release.[5]

---

[5] The Court notes that Plaintiff might be able to sufficiently allege a procedural due process claim against Defendant Lockwood. *See Kindler*, 2019 WL 4511717, at *4 ("Because the *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] inquiry is a factual one, dismissal of [plaintiff]'s due process claim at the pleading stage on this basis would be inappropriate." (citing *Schultz v. Egan*, 103 F. App'x 437, 441 (2d Cir. 2004) (summary order))).  In the Complaint, Plaintiff suggests that any statement that Bellevue does not accept sex offenders is "a lie." (Compl., Dkt. 1, at ECF 7.) However, the Complaint fails to allege any facts showing that Lockwood was aware that her statement regarding Bellevue was inaccurate or that she was deliberately indifferent to the relevance of that information or otherwise deliberately indifferent with respect to Plaintiff's release from the RTF, such that her alleged actions deprived Plaintiff of adequate procedural protections. Thus, if Plaintiff wishes to amend his Complaint to pursue this claim, he must provide additional facts to cure these deficiencies.

> e. Department of Homeless Services Assistant Commissioner Yvonne
>    Tinsley-Ballard

Plaintiff alleges that Yvonne Tinsley-Ballard, "a Commissioner for DHS Men[']s Adult Shelters in NYC," has "admit[ted] that administrative ease is why DOCCS does the imaginary wait list" for placing convicted sex offenders in shelters, and that she told Plaintiff that Bellevue *does* accept sex offenders. (Compl., Dkt. 1, at ECF 9.) Plaintiff further alleges that although Tinsley-Ballard "said that DHS cannot house [Plaintiff] if [he is] not present at an intake shelter in person," the fact that "parole gets [sex offenders] a permanent shelter placing after [they] wait 12 months" shows that DHS "obviously [can] do the assessment off [of] paper work and not when [Plaintiff is] present." (*Id.*)

Because the Complaint does not contain specific factual allegations as to how Tinsley-Ballard personally contributed to Plaintiff receiving insufficient procedures for his housing placement, the Court cannot infer that she was personally involved for the purposes of § 1983 liability. Thus, Plaintiff's claims as to Defendant Tinsley-Ballard are dismissed.

## C.   Monell Claim

A municipality can be liable under § 1983 if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019); *Doe v. City of New York*, No. 18-CV-670 (ARR) (JO), 2018 WL 3824133, at *8 (E.D.N.Y. Aug. 9, 2018). "Under the Supreme Court's holding in *Monell*, a municipal entity may be held liable under Section 1983 where a plaintiff demonstrates that the constitutional violation complained of was caused by a municipal policy or custom." *Friel v. County of Nassau*, 947 F. Supp. 2d 239, 248 (E.D.N.Y. 2013) (internal quotation marks and citation omitted)). "The policy or custom need not be memorialized in a specific rule or regulation." *Id.* at 249 (quoting *Kern v. City of Rochester*,

93 F.3d 38, 44 (2d Cir. 1996)).   However, "[i]t has long been well-settled that 'the mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference.'"   *Zherka v. City of New York*, 459 F. App'x 10, 12 (2d Cir. 2012) (summary order) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995)); *see also Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's . . . policies or customs . . . led to an independent constitutional violation." (emphasis in original)).

Plaintiff does not name any municipal entity as a Defendant.   However, throughout the Complaint, Plaintiff alleges that New York City's system for placing convicted sex offenders in SARA-compliant homeless shelters or other city housing is fundamentally flawed and caused him to suffer a constitutional deprivation.   (*See, e.g.*, Compl., Dkt. 1, at ECF 6 ("[T]here's some kind of [ordinance] where there's only a certain amount of sex offenders allowed to a zip code. . . . De Blasio has said he will free up beds an[d] make more shelter beds [which] he has not."); *id.* at ECF 8 ("At any time[,] there's 3 plus beds that open up every single day in NYC shelters but only 10 sex offenders per month allowed.   So any one person can wait up to 12 months for a shelter bed because of a made up policy between Mrs[.] Dorsey an[d] someone from DHS."); *id.* at ECF 9 ("[Defendant Lockwood] says she can't call anyone for me and that she isn't allowed to."); *id.* ("DHS cannot house me if I am not present at an intake shelter in person.").)

Construing such allegations liberally, as the Court must for *pro se* pleadings, the Court finds that Plaintiff has alleged the shell of a potential *Monell* claim that New York City's shelter housing policy and placement regime for convicted sex offenders deprived him of his rights.   In

18

other words, the sum of Plaintiff's allegations appear to identify a "municipal policy or custom" showing that "the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]" and establishing "a causal connection between the policy or custom and the alleged deprivation of his constitutional rights." *Santana v. City of New York*, No. 15-CIV-6715 (ER), 2018 WL 1633563, at *10 (S.D.N.Y. Mar. 29, 2018).  The allegations relating to such a policy, however, are thin.  At most, the Complaint alleges that DHS Commissioner Tinsley-Ballard has "admit[ted] that administrative ease is why DOCCS does the imaginary wait list" for placing convicted sex offenders in shelters (Compl., Dkt. 1, at ECF 9), and that DOCCS employee Stacey Dorsey and an unidentified person from DHS maintain a "made up policy" for placing convicted sex offenders in New York City shelter housing that is designed "solely for administrative ease" (*id.* at ECF 8).   While, as explained above, Plaintiff has failed to state a due process claim as to Defendants Tinsley-Ballard and Dorsey, these allegations might be sufficient to state a *Monell* claim, if Plaintiff is able to supplement his complaint with specific allegations showing that Tinsley-Ballard's and/or Dorsey's purported policies were the policies or practices of a City agency such as the Department of Parole or DHS, and that such a municipal policy or practice caused the injuries about which Plaintiff complains.  *See Zherka*, 459 F. App'x at 12 ("[T]he mere assertion that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." (quoting *Zahra*, 48 F.3d at 685)); *see also Segal*, 459 F.3d at 219.  Thus, should Plaintiff wish to amend his Complaint to add a *Monell* claim against New York City, he will have to supplement his allegations to support an inference regarding a *municipal* policy or practice that caused his alleged injuries.

Lastly, the Court finds that Plaintiff fails to allege facts showing that Mayor de Blasio was personally involved in Plaintiff's alleged constitutional deprivation.  *See Wright*, 21 F.3d at 501;

*Diggs v. DeBlasio*, No. 19-CV-3371 (PKC) (LB), 2019 WL 3253057, at *3 (E.D.N.Y. July 18, 2019).  Thus, Plaintiff's due process claims against Defendant de Blasio in his official and individual capacities are dismissed.

### D.     Eighth Amendment Claims

The Eighth Amendment "prohibits the infliction of cruel and unusual punishments on those convicted of crimes, including deprivations suffered during imprisonment, provided that they involve the unnecessary and wanton infliction of pain." *Franza v. Stanford*, No. 16-CV-7635 (KMK), 2018 WL 914782, at *12 (S.D.N.Y. Feb. 14, 2018) (internal quotation marks omitted) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991)).  "A plaintiff asserting an Eighth Amendment claim pursuant to 42 U.S.C. § 1983 must meet two requirements. 'First, the alleged deprivation must be, in objective terms, sufficiently serious.'  Second, 'the charged official must act with a sufficiently culpable state of mind.'" *Francis v. Fiacco*, 942 F.3d 126, 150 (2d Cir. 2019) (internal quotation marks omitted) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)).  "[O]nly the deliberate infliction of punishment, and not an ordinary lack of due care for prisoner interests or safety, lead[s] to liability" on the second prong. *Id.* (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).

Here, as discussed below, Plaintiff alleges that P.O. Castillo, Governor Cuomo, and Attorney General James were all in some way deliberately indifferent to Plaintiff's prolonged incarceration.  "The Eighth Amendment does, in some circumstances, proscribe detention or incarceration beyond a lawfully imposed sentence." *Franza*, 2018 WL 914782, at *12 (citing *Sudler v. City of New York*, 689 F.3d 159, 169 n.11 (2d Cir. 2012); *Brunson v. Duffy*, 14 F. Supp. 3d 287, 292–93 (S.D.N.Y. 2014)).  However, the additional incarceration "must . . . be the product of deliberate indifference." *D'Angelo*, 2017 WL 6514692, at *10 (quoting *Campbell v. Peters*, 256 F.3d 695, 700 (2d Cir. 2001)); *see id.* (dismissing prolonged incarceration claim where

20

plaintiff did not allege defendants "personally knew about [p]laintiff's prolonged incarceration or, in the case of supervisors, w[ere] grossly negligent in supervising the employees who reviewed [p]laintiff's complaints or otherwise knew about his claims"). Additionally, to prevail on such claims, plaintiffs must normally allege that they were held beyond their maximum sentence. *See D'Angelo*, 2017 WL 6514692, at *10 (citing *Calhoun v. N.Y. State Div. of Parole Officers*, 999 F.2d 647, 654 (2d Cir. 1993)).

### a.  P.O. Castillo

Plaintiff alleges that "P.O. Castillo knows that she can come either pick [him] up or have [him] released to shelter intake to be housed but she leaves [him] in prison." (Compl., Dkt. 1, at ECF 7.)  Taken together with Plaintiff's allegation that he "maxed out" his prison time on September 10, 2019, but was held until at least September 21, 2020 (*see id.* at ECF 3, 5; Oct. 1, 2020 Letter, Dkt. 5), Plaintiff appears to allege a claim for deliberate indifference to Plaintiff's prolonged incarceration as to P.O. Castillo.  However, in order for such a claim to succeed, Plaintiff must provide additional details about the maximum length of his sentence, and how long he actually served. *See Sudler*, 689 F.3d at 169 n.11; *Brunson*, 14 F. Supp. 3d at 292–93; *Calhoun*, 999 F.2d at 654.  The Court thus dismisses Plaintiff's Eighth Amendment claim as to P.O. Castillo, but with leave to replead should Plaintiff be able to allege that he was confined beyond the length of his maximum sentence.

### b.  Governor Andrew Cuomo

Plaintiff alleges that Governor Cuomo was "aware" that Plaintiff "maxed out" on his prison time but that Plaintiff was nevertheless being held at Fishkill's RTF.  (Compl., Dkt. 1, at ECF 5.) However, even liberally construed, the Court cannot conclude on the basis of these allegations that Governor Cuomo is plausibly involved in more than a symbolic role in Plaintiff's confinement.

*See Wright*, 21 F.3d at 501.  Additionally, Plaintiff's sparse allegations related to his conditions of confinement and potential COVID-19 exposure, were they to be bolstered with more specificity, would still suffer from the same flaw, in that Governor Cuomo is not personally involved in Fishkill's "medical intervention," or lack thereof.  (*See* Compl., Dkt. 1, at ECF 5.)  Indeed, Plaintiff does not allege that Governor Cuomo oversees Plaintiff's confinement in a supervisory role, or that he was personally involved in the confinement.  *See Hernandez*, 341 F.3d at 144–45 ("'Absent some personal involvement by [the supervisory official] in the allegedly unlawful conduct of his subordinates,' he cannot be liable under section 1983." (alteration in original) (quoting *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987))).  Instead, Plaintiff's claims appear to be brought against Governor Cuomo in his official capacity as a stand-in for the state, *see Spiteri v. Russo*, No. 12-CV-2780 (MKB) (RLM), 2013 WL 4806960, at *18 (E.D.N.Y. Sept. 7, 2013), *aff'd sub nom. Spiteri v. Camacho*, 622 F. App'x 9 (2d Cir. 2015) (summary order); *Nolan v. Cuomo*, No. 11-CV-5827 (DRH) (AKT), 2013 WL 168674, at *9–10 (E.D.N.Y. Jan. 16, 2013), and accordingly, Governor Cuomo is entitled to sovereign immunity on them, *see In re Deposit Ins. Agency*, 482 F.3d at 617.  Thus, Plaintiff's Eighth Amendment claim against Governor Cuomo is dismissed.

### c.  Attorney General Letitia James

Plaintiff's Eighth Amendment claim against Attorney General James fails for the same reason as his claim against Governor Cuomo.  Plaintiff alleges that Attorney General James "knows that everything going on is wrong an[d] illegal" and that he has "written to her about 10 times [and] never [gotten] a respon[s]e."  (Compl., Dkt. 1, at ECF 10.)  Plaintiff further alleges that Attorney General James said that Plaintiff "can spend [his] entire post-[r]elease in jail."  (*Id.*).  However, Plaintiff does not allege that Attorney General James is personally involved in Plaintiff's

prolonged confinement, or that she supervised that confinement.  The claims against her are thus against her in her official capacity as a representative of the state, and she is therefore entitled to sovereign immunity.  *See In re Deposit Ins. Agency*, 482 F.3d at 617.  Accordingly, Plaintiff's claims against Attorney General James are dismissed.

## IV.    Challenge to the Legality of Fishkill's RTF

Finally, Plaintiff appears to challenge the underlying legality of Fishkill's RTF housing, and his confinement there beyond the six months provided for by state law.  *See* N.Y. Penal Law § 70.45(3).  Specifically, Plaintiff alleges that Defendant Anthony J. Annucci "design[a]ted Fishkill an RTF" even though it "has yet to meet the requir[e]ments of an actual RTF," and has also "extended [Plaintiff's] stay in RTF past the maximum of 6 months that law requires." (Compl., Dkt. 1, at ECF 8.)  Similarly, Plaintiff alleges that Supt. E. Williams, who runs Fishkill's RTF program, "knows [Fishkill is] not an RTF" and that Plaintiff is held "under the same rules as a general population inmate."  (*Id.* at ECF 9 ("I eat in the mess-hall, recreation is [in] the facility yard.").).  However, "to the extent that Plaintiff alleges that Defendants failed to follow certain state laws or prison regulations, . . . alleged violations of Defendants' failure to follow state laws or prison regulations do not violate due process."  *Adams*, 2020 WL 1489787, at *8 n.11 (citing *Golian v. N.Y.C. Admin. for Children Servs.*, 282 F. Supp. 3d 718, 727 (S.D.N.Y. 2017); *Holland v. City of New York*, 197 F. Supp. 3d 529, 549 (S.D.N.Y. 2016)); *see also Kuck v. Danaher*, 600 F.3d 159, 167 (2d Cir. 2010); *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990).

Additionally, the Court notes that New York trial courts have held that confinement within an RTF, even for a period beyond six months, does not necessarily violate New York's statutory definition of an RTF.  *See Alcantara v. Annucci*, 66 Misc. 3d 850, 861 (N.Y. Sup. Ct. 2019) ("Given the [Legislature's] express authorization to locate residential treatment facilities at correctional facilities, the fact that RTF parolees are treated much the same as general population

inmates, particularly within the confines of a medium security correctional facility where parolees are afforded more freedoms than more secure correctional facilities, does not violate [N.Y. Correct. Law § 2(6)]."); *see also Alcantara v. Annucci*, 55 Misc. 3d 1216(A), at *6 (N.Y. Sup. Ct. 2017) (table decision) ("Correction Law § 73 does not allow long-term mandatory confinement in a residential treatment facility, but it appears to allow DOCCS to use the residential treatment facility as a stop-gap residence for persons who are on community supervision under certain circumstances, such as when persons are unable to meet the conditions of community supervision imposed by the Board of Parole. . . . Once the six-month period authorized by Penal Law § 70.45 (3) lapses, under Correction Law § 73, DOCCS may require the person to remain in such a facility only until he, with appropriate assistance from DOCCS, complies with the Board of Parole's requirements for an approvable release plan, including suitable housing.").

Accordingly, Plaintiffs claims against Defendants Annucci and Williams are dismissed for failure to state a claim on which relief may be granted.

## CONCLUSION

For the reasons stated above, Plaintiff's motion to proceed IFP is granted. All his claims are dismissed, except for a Fourteenth Amendment procedural due process claim as to P.O. Castillo. However, because the Second Circuit has made clear that district courts "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Cuoco*, 222 F.3d at 112, the Court grants Plaintiff sixty (60) days to file an Amended Complaint alleging, if applicable, additional facts regarding (1) the maximum length of his sentence and the amount of time he was incarcerated; (2) whether and how S.P.O. Kennedy, DOCCS Reentry Specialist Stacey Dorsey, DOCCS Inmate Counselor Beverly Lockwood, and/or DHS Commissioner Tinsley-Ballard, were personally involved in or

supervised his deprivations of due process, and/or (3) any municipal policy or custom maintained by New York City that deprived Plaintiff of his constitutional due process rights.  Plaintiff is advised that the amended complaint will completely replace the Complaint, must be captioned "Amended Complaint," shall bear the same docket number as this Memorandum and Order, and must contain all the details of the original Complaint.  All further proceedings shall be stayed for 60 days or until further Order of the Court.  If Plaintiff fails to file an amended complaint within the time allotted, the Complaint will proceed only as to the procedural due process claim against P.O. Castillo.

The Court notes that, at this time, it is not ordering the Clerk of Court to prepare a summons against Defendant P.O. Castillo, nor ordering the United States Marshals Service to serve the Summons and Complaint.  This is to conserve the Court's resources in light of the current COVID-19 pandemic.  The Court shall direct both of those tasks following the deadline for Plaintiff to file an amended complaint.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore IFP status is denied for purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*

Pamela K. Chen
United States District Judge

Dated: January 20, 2021
        Brooklyn, New York